UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

RUSLANBEK KARAZAKOV,                                         Petitioner,

v.                                                  Civil Action No. 4:26-cv-132-DJH

ARTHUR MAGLINGER, Jailer, Daviess
County Detention Center et al.,                             Respondents.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Petitioner Ruslanbek Karazakov, a noncitizen resident of Illinois currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending his removal proceedings.  He alleges that his detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.  (Docket No. 1)  The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 6), and they have submitted briefing setting out their respective legal arguments (D.N. 9; D.N. 10).  After careful consideration, the Court will grant Karazakov's petition for the reasons explained below.

**I.**

Karazakov is a citizen of Kyrgyzstan.  (D.N. 1, PageID.2 ¶ 2; D.N. 9-2, PageID.76)  He entered the United States on or about August 16, 2023, and was detained and placed in removal proceedings via a Notice to Appear.  (D.N. 9-2, PageID.76)  The Notice to Appear designated Karazakov as an "arriving alien." (*Id.*)  On August 17, 2023, Karazakov was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A).[1]  (D.N. 1, PageID.2 ¶ 3; D.N. 9-3, PageID.80)  The parole expired on

---

[1] Parole under 8 U.S.C. § 1182(d)(5)(A) "permits a noncitizen to physically enter the [United States] . . . subject to a reservation of rights by the Government that it may continue to treat the noncitizen 'as if stopped at the border.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

August 14, 2024.  (D.N. 9-3, PageID.80)  Karazakov has a pending asylum application and has received employment authorization.  (*See* D.N. 1-6, PageID.28–39; D.N. 1-5, PageID.26)  On May 13, 2024, Karazakov was charged in Illinois court "for the offense of DUI/ALCOHOL, a misdemeanor"; that charge remains pending.  (D.N. 9-1, PageID.74)  Prior to his re-detention, Karazakov worked as a truck driver.  (D.N. 1, PageID.2 ¶ 5)  On February 20, 2026, Karazakov was "stopped for a roadside commercial vehicle inspection in Seymour, Indiana, and was issued a Driver/Vehicle Examination Report placing him out of service."  (*Id.*, PageID.5 ¶ 23)  Law enforcement officers determined that Karazakov could not "satisfy the English language proficiency requirements" for drivers pursuant to federal law, and Karazakov "[f]ailed the Highway Traffic Sign Assessment."  (D.N. 1-7, PageID.41)  After Indiana troopers "contacted Indianapolis [federal Enforcement and Removal Operations] Fugitive Operations Team officers," Karazakov was arrested and eventually detained by U.S. Immigration and Customs Enforcement (ICE) authorities.    (D.N. 9-1, PageID.74)    The administrative arrest warrant authorized Karazakov's detention pursuant to 8 U.S.C. § 1226.[2] (D.N. 9-4, PageID.81)  Karazakov is detained at the Daviess County Detention Center.  (D.N. 1, PageID.2 ¶ 5; D.N. 9, PageID.64)

Karazakov seeks a writ of habeas corpus against Daviess County Jailer Arthur Maglinger, the Acting Director of the Chicago ICE Field Office, and Acting Director of ICE Todd Lyons. (D.N. 1, PageID.4 ¶¶ 15–17)  Karazakov alleges that his detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226, and due process under the Fifth Amendment; he further alleges that his parole was revoked in violation of the Immigration and Nationality Act.  (*See id.*, PageID.7–11 ¶¶ 28–39)  Karazakov also filed a motion for a temporary restraining order and

---

[2] The warrant cited section 236 of the Immigration and Nationality Act (D.N. 9-4, PageID.81), which is codified at 8 U.S.C. § 1226.  *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *1 n.1 (W.D. Ky. Sep. 19, 2025).

preliminary injunction seeking his immediate release. (D.N. 4) Karazakov asks the Court to order his immediate release or, in the alternative, a bond hearing. (*See* D.N. 1, PageID.12) Respondents argue that (1) Karazakov is properly detained under § 1225(b)(2) as an arriving alien; (2) his parole was properly terminated; (3) Karazakov "is receiving the process Congress provided [under § 1225]"; and (4) Karazakov cannot seek injunctive relief with the habeas petition.[3] (*See* D.N. 9, PageID.64–71)

## II.

### A.    Jurisdiction

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) to review the decision to revoke Karazakov's parole. (*See id.*, PageID.67–68) Section 1252(a)(2)(B)(ii) states that federal courts lack jurisdiction to "review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But the documentation included with Respondents' response brief indicates that Karazakov's parole automatically expired on August 14, 2024, approximately one year after it was issued. (D.N. 9-3, PageID.80) Respondents also state in their response brief that Karazakov "was granted parole with an automatic termination date of August 14, 2024" (D.N. 9, PageID.64). *See* 8 C.F.R. § 212.5(e)(1) (stating that "[p]arole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized"). Based on the record, and because Karazakov does not dispute that his parole

---

[3] Respondents do not argue whether Karazakov must exhaust administrative remedies. (*See generally* D.N. 9) Therefore, the Court will not address that issue. And because the Court will grant Karazakov's petition and deny the motion for injunctive relief as moot for the reasons given below, the Court need not consider Respondents' argument as to whether injunctive relief is warranted.

automatically terminated (*see generally* D.N. 10), the Court need not address Respondents' jurisdictional argument given that Karazakov's parole was not terminated as a matter of discretion. The Court has jurisdiction to consider Karazakov's claims in any event. *See Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) ("[28 U.S.C. § 2241] confers jurisdiction [on district courts] to hear habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))).

**B.    Immigration and Nationality Act**

Karazakov asserts that his parole was revoked in violation of 8 U.S.C. § 1182(d)(5)(A) and that he is improperly detained under § 1225(b)(2).    (*See* D.N. 1, PageID.7–9 ¶¶ 28–34) Respondents argue that the government properly revoked Karazakov's parole but that he is an "arriving alien" lawfully detained under § 1225(b)(2) in any event.  (*See* D.N. 9, PageID.64–65) For the reasons discussed above, the Court need not address whether Karazakov's parole was revoked in violation of the Immigration and Nationality Act.

The Notice to Appear designated Karazakov as an "arriving alien."  (D.N. 9-2, PageID.76) His parole automatically expired approximately one year after the Notice to Appear was issued. (D.N. 9-3, PageID.80)  As the Court has previously explained, noncitizens who are initially designated as arriving aliens, overstay their parole, and are then arrested in the interior of the United States are not subject to detention under § 1225. *See Quintero v. Olson*, No. 4:26-cv-34-DJH, 2026 WL 596643, at *2–3 (W.D. Ky. Mar. 3, 2026).  The Court explained in *Quintero* that such noncitizens are no longer "arriving" to the United States pursuant to § 1225. *See id.* at *3 (citations omitted).  "And although § 1225 addresses the 'expedited removal of inadmissible arriving aliens,' the provision that Respondents argue authorizes [Karazakov's] detention— § 1225(b)(2)—does not pertain to arriving aliens" (*see* D.N. 9, PageID.64–65). *Quintero*, 2026

4

WL 596643, at *3. "Instead, as this Court and others have made clear, § 1225(b)(2) applies where an applicant for admission is also 'seeking admission' to the United States." *Id.* (citations omitted). "[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 487 (E.D.N.Y. 2025). "This category does not include petitioners who remained in the United States after their parole ended." *Quintero*, 2026 WL 596643, at *3 (citation omitted). Because federal immigration officials arrested Karazakov in the interior of the United States more than two years after he arrived (*see* D.N. 9-1, PageID.74), § 1225 does not authorize his detention. *Quintero*, 2026 WL 596643, at *3; *Hyppolite*, 808 F. Supp. 3d at 487.

Instead, § 1226(a) governs Karazakov's detention. Section 1226(a) "applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). In accordance with its prior decisions, the Court concludes that Karazakov is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Coronel-Hernandez v. Woosley*, No. 4:26-cv-20-DJH, 2026 WL 227011, at *4 (W.D. Ky. Jan. 28, 2026); *Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025); *Lopez*, 2025 WL 3217036, at *3; *Alonso*, 2025 WL 3083920, at *8.

## C.    Due Process

Karazakov asserts that his detention without a bond hearing violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.9–11 ¶¶ 35–39) Respondents argue that Karazakov "is receiving the process Congress provided" under § 1225. (D.N. 9, PageID.69; *see id.*, PageID.69–

70)  Because Karazakov is detained under § 1226(a), not § 1225(b)(2), Respondents' argument as to the due process required by § 1225(b)(2) is irrelevant.  *Singh*, 2025 WL 3298080, at \*5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings.  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at \*8 (W.D. Ky. Nov. 4, 2025) (citing *Barrera*, 2025 WL 2690565, at \*6).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at \*6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Karazakov "has a significant private interest in not being detained."  *Id.*; *see Singh*, 2025 WL 3298080, at \*6; *Alonso*, 2025 WL 3083920, at \*9.  Moreover, "the risk of erroneously depriving [Karazakov] of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025); *see* 8 C.F.R. § 1236.1(c)(8), (d)(1).  Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings."  *Barrera*, 2025 WL 2690565, at \*7 (citation omitted).  But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland

Security] can readily follow here." *Hyppolite*, 808 F. Supp. 3d at 493. Thus, because all three *Mathews* factors weigh in Karazakov's favor, the Court concludes that his detention violates due process. *See Singh*, 2025 WL 3298080, at \*5–6; *Barrera*, 2025 WL 2690565, at \*6–7.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Karazakov's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Karazakov, and, in the event he is arrested and re-detained, provide him with a bond hearing before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a). Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **March 24, 2026**.

(2)    Karazakov's motion for a temporary restraining order and preliminary injunction (D.N. 4) is **DENIED** as moot.

(3)    Upon receipt of the notice of compliance, this matter will be **CLOSED**.

March 23, 2026

**David J. Hale, Chief Judge**
**United States District Court**